1   Michael A. Garabed (SBN 223511)
    mgarabed@reedsmith.com
2   REED SMITH LLP
    355 South Grand Avenue, Suite 2900
3   Los Angeles, CA  90071

4   Telephone:  (213) 457-8000
    Facsimile:   (213) 457-8080
5
    Attorneys for Plaintiffs
6   GE Commercial Corporation (Australia)
    Pty Ltd and GE Commercial Australasia
7   Pty Ltd

8

9

10                  IN THE UNITED STATES DISTRICT COURT

11                 FOR THE CENTRAL DISTRICT OF CALIFORNIA

12

13   GE COMMERCIAL CORPORATION              No.:  CV 10- 02804 CBI
     (AUSTRALIA) PTY LTD, an Australia                      VBKx
14   corporation, and GE COMMERCIAL
     AUSTRALASIA PTY LTD, an Australia      COMPLAINT FOR
15   corporation,                           DECLARATORY RELIEF

16                     Plaintiffs,

17          vs.

18   AGG AVIATION LLC, a limited liability
     company, JEFFREY GEORGE,
19   individually, and JULIE FRANK,
     individually,
20
                       Defendants.
21

22

23

24

25

26

27

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

— 1 —

**Parties**

1.    Plaintiffs GE Commercial Corporation (Australia) Pty Ltd and GE Commercial Australasia Pty Ltd (collectively, "GE Commercial") are corporations organized under the laws of Australia having their principal place of business in Sydney, New South Wales, Australia.

2.    Defendant AGG Aviation, LLC ("AGG") is a limited liability company organized under the laws of the United States having its principal place of business at 3540 W. Sahara Ave., Suite 386, Las Vegas, Nevada.

3.    Defendant Jeffrey George ("George") is an individual and resident and citizen of the State of Nevada and is domiciled in Nevada.

4.    Defendant Julie Frank ("Frank") is an individual and resident and citizen of the State of Nevada and is domiciled in Nevada.

**Jurisdiction**

5.    The parties are of diverse citizenship.

6.    The amount in controversy exceeds the sum of $75,000 exclusive of costs and interest.  The value of the Aircraft (as defined below) exceeds $75,000.

7.    This is a declaratory relief action.  An actual controversy exists between GE Commercial and AGG, George, and Frank (collectively "Defendants") with respect to the validity of certain lien claims of Defendants filed with but not recorded by the Federal Aviation Administration against the Aircraft (as defined below).

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

8.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(a) and 28 U.S.C. § 2201.  The Aircraft was hangered in Palm Springs, California at the time the lien claims were filed.

## Liens on Aircraft

9.     On July 18, 2007, GE Commercial entered into an aircraft security agreement (the "Security Agreement") with Wells Fargo Bank Northwest, N.A. ("Wells Fargo"), as owner trustee, for the purchase of one (1) Challenger 604 Aircraft, model CL-600-2B16, serial no. 5434, registration number N604AU (formerly N322BX), together with two (2) General Electric engines, model CF34-3B, serial nos. 872613 and 872614, together with all property essential and appropriate to the operation of the Aircraft as further set forth in the Security Agreement (collectively, the "Aircraft").  A true and correct copy of the Security Agreement is attached hereto as Exhibit A.

10.    GE Commercial filed the Security Agreement with the Federal Aviation Administration ("FAA") on July 18, 2007.  The FAA recorded the Security Agreement on August 3, 2007.  A true and correct copy of the Aircraft Title Report is attached hereto as Exhibit B.

11.    On March 4, 2009, AGG filed a claim of lien dated February 24, 2009 (the "First Claim"), in favor of American Express, George, and Frank.  *See* Exhibit B, p. 2, ¶ (1).

12.    Frank has stated that American Express has no lien or interest in the Aircraft.  Frank has further stated that the claim of lien, which she prepared without authorization from American Express, lists American Express solely because George

COMPLAINT FOR DECLARATORY RELIEF

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

1  and/or Frank owe money to American Express, and not because American Express

2  has or has made any claim of interest in the Aircraft.  American Express has or shortly

3  will be formally disclaiming any interest in the Aircraft, and for this reason there is no

4  need at this time to name American Express as a party to this lawsuit.

5

6        13.    The FAA did not record the First Claim.  By letter dated March 5, 2009

7  (the "March 5, 2009 Letter"), the FAA requested clarification from the lien claimant

8  as to the three entities listed, the date the last service was performed, and the

9  signature.  The FAA further advised AGG that pursuant to Nevada statutes, claims of

10  lien are only acceptable provided they are for labor, materials, storage, or services

11  rendered to the Aircraft.  A true and correct copy of the March 5, 2009 letter is

12  attached hereto as Exhibit C.

13

14        14.    On April 14, 2009, AGG filed a claim of lien dated February 24, 2009

15  (the "Second Claim"), in favor of AGG.  *See* Exhibit B, p. 2, ¶ (2).

16

17        15.    The FAA did not record the Second Claim.  By letter dated May 21, 2009

18  (the "May 21, 2009 Letter"), the FAA requested the complete date for the last services

19  rendered and a recording fee.  A true and correct copy of the May 21, 2009 Letter is

20  attached hereto as Exhibit D.

21

22        16.    On January 20, 2010, AGG filed a claim of lien dated January 14, 2010

23  (the "Third Claim"), in favor of AGG Aviation LLC and George.  *See* Exhibit B, p. 2,

24  ¶ (3).

25

26        17.    The FAA did not record the Third Claim.  By letter dated February 4,

27  2010 (the "February 4, 2010 Letter"), the FAA requested the complete date for the last

28

services rendered. A true and correct copy of the February 4, 2010 Letter is attached hereto as Exhibit E.

18.    GE Commercial has repossessed the Aircraft from Wells Fargo. GE Commercial currently has a buyer for the Aircraft and an executed Sales Agreement.

19.    AGG, George, and Frank maintain that they possess enforceable lien claims against the Aircraft that would impede clear title upon the Aircraft's sale.

20.    The lien claims were not properly filed and were never recorded by the FAA, and as such, are not enforceable against the Aircraft.

21.    Moreover, the lien claims do not relate to claims for labor, materials, storage, or services rendered to the Aircraft. Accordingly, even if the lien claims were properly filed, and even if they were recorded by the FAA, they would not constitute valid liens against the Aircraft pursuant to applicable law.

## Relief Sought

22.    A controversy has arisen and presently exists between GE Commercial and Defendants concerning the validity of certain lien claims Defendants have filed against the Aircraft.

23.    GE Commercial brings this action seeking a declaration that any claims of Defendants were not properly registered with the FAA, and, even if they were or could be, are not lienable services. Therefore, even if the filing defects are curable, the underlying charges are, as a matter of law, not lienable. Accordingly, GE

1  Commercial seeks a declaration that it possesses a senior security interest in the
2  Aircraft.

3

4       24.    GE Commercial, therefore, respectfully requests that this Court declare
5  that its security interest is entitled to priority as against all other claims against the
6  Aircraft and that Defendants' claims are not in proper form and even if the claims
7  were in proper form they are not valid lien claims.

8

9       WHEREFORE, GE Commercial prays that this Court enter judgment
10  against Defendants as follows:

11

12      1.    For a judgment declaring that GE Commercial has a senior security
13          interest in the Aircraft and is entitled to priority as against all liens or
14          other claims against the Aircraft.

15

16      2.    For a judgment declaring that Defendants' claims, even if filed in proper
17          form, do not constitute lienable claims.

18

19      3.    For an Order compelling Defendants to sign a Release of Aircraft from
20          Lien, and take any such steps as are or may be required to sell the
21          Aircraft free and clear of any claims of lien of Defendants, or,
22          alternatively, granting GE Commercial a power of attorney permitting it
23          to execute, on behalf of Defendants, a Release of Aircraft from Lien, and
24          take such steps as are or may be required to sell the Aircraft free and clear
25          of any claims of lien of Defendants.

26

27

28

REED SMITH LLP
A limited liability partnership formed in the State of Delaware

COMPLAINT FOR DECLARATORY RELIEF

REED SMITH LLP

A limited liability partnership formed in the State of Delaware

4.     For other and further relief as the Court deems proper.


       Dated:  April 15, 2010.

                                        REED SMITH LLP


                                        By
                                           Michael A. Garabed
                                           Attorneys for Plaintiffs
                                           GE Commercial Corporation
                                           (Australia) Pty Ltd and GE
                                           Commercial Australasia Pty Ltd

COMPLAINT FOR DECLARATORY RELIEF

# EXHIBIT A

## AIRCRAFT SECURITY AGREEMENT

THIS AIRCRAFT SECURITY AGREEMENT (as amended, supplemented or otherwise modified from time to time, this "Agreement") is made and entered into as of _____ 2007 by and between GE Commercial Corporation (Australia) Pty Ltd (ACN 080 974 747) and GE Commercial Australia Pty Ltd (ACN 095 876 292), each incorporated in Australia of Level 12, NAB House, 255 George Street, Sydney, New South Wales, Australia (together with their successors and assigns, if any, "Secured Party") and Wells Fargo Bank Northwest NA as Owner Trustee a National Association organized and existing under the laws of the United States of America and having its principal place of business at 299S Main Street, 12th Floor, Salt Lake City, UT, 84111, United States of America (together with its successors and permitted assigns, if any, "Lessor") in relation to amounts owing by AGG Learjet Pty Ltd (ACN 113 963 214) as trustee for the AGG Aviation Trust organized and existing under the laws of Australia (the "Debtor") to the Secured Party.

1. **Grant of Security Interest.** To secure Debtors' payment and performance of any and all debts, obligations and liabilities of any kind, nature or description whatsoever (whether due or to become due) of Debtor to Secured Party, including but not limited to those arising under the Loan Agreement between the Secured Party and each Debtor dated on or about the date hereof, as it may be amended from time to time (the "Loan Agreement"), this Agreement, and/or any related documents, including without limitation, any additional loans arising out of, or relating to, this Agreement which may be executed after the date hereof and any renewals, extensions, replacements and modifications thereto (the Loan Agreement, this Agreement and all such related documents being hereinafter collectively referred to as the "Debt Documents"), and any renewals, extensions, replacements and modifications of such debts, obligations and liabilities including all costs of enforcing any rights or remedies of Secured Party hereunder (including all costs of repossession, rehabilitation, re-sale, re-lease and/or manufacture) and all costs of collecting amounts due hereunder (including all attorneys' fees) (all of the foregoing, the "Obligations"), Lessor grants to Secured Party a security interest and an "international interest" (as such term is defined in the Convention on International Interests in Mobile Equipment (the "Convention") and Protocol thereto on Matters Specific to Aircraft Equipment (the "Protocol") concluded in Cape Town in November 2001 (the Convention and the Protocol, each, in the official English language text thereof, are collectively referred to herein as the "Cape Town Convention")) in the aircraft and other property described below and in all additions and accessions thereto and substitutions therefor, now or hereafter owned, all unearned insurance premiums and insurance proceeds relating to such property, any "associated rights" (as defined by the Cape Town Convention) conferred by this Agreement or any of the Debt Documents and the proceeds of all of the foregoing (all of such property and proceeds are collectively referred to as the "Aircraft"):

Aircraft Make: Challenger 604          Serial No: 5434;                    Registration No.: N322BX;
Engine make: General Electric;          Model No.: CF34-3B;              Serial Numbers: 872613 and 872614

together with, all other property essential and appropriate to the operation of the Aircraft, including but not limited to all instruments, avionics, auxiliary power units, equipment and accessories attached to, connected with or related to the Aircraft, and all logs, manuals and other documents issued for, or reflecting uses or maintenance of, the Aircraft and, to the extent Lessor is permitted to grant a security interest therein, all manufacturer's and supplier's warranties with respect to the foregoing and all rights and remedies (including rights under prepaid accounts or held in trust pursuant to any maintenance and servicing program).

2. **Home Airport.** The home airport of the Aircraft will be:

Palm Springs International Airport
210 North El Cielo Road
Suite 202
Palm Springs, CA 92262

3. **Representations, Warranties and Covenants of Debtor.** As of the date hereof, Lessor represents, warrants and covenants that:

(a) Lessor (i) is, and will remain, duly organized, validly existing and in good standing under the laws of the State set forth in the preamble of this Agreement, (ii) is, and will remain, duly qualified and licensed in every jurisdiction wherever necessary to carry on its business and operations and (iii) is and will continue to be a "citizen of the United States", within the meaning of 49 U.S.C. §40102, as amended, and the regulations thereunder so long as any Obligations are due to Secured Party under the Debt Documents or otherwise;

(b) Lessor's exact legal name is as set forth in the first paragraph of this Agreement. Lessor's "location" for purposes of Section 9-307 of the Uniform Commercial Code is the State set forth in the preamble of this Agreement. For purposes of the Cape Town Convention, Lessor is situated in the "Contracting State" (as defined in the Cape Town Convention) of the United States of America. There are no lien, security interest, mortgage, claims, charge, "international interest" (as defined in the Cape Town Convention) or other encumbrance (including non-consensual liens filed at the International Registry or otherwise), in each case whether or not registered or filed at the FAA or the International Registry or elsewhere (collectively, "Liens") in or on the Aircraft, other than Liens in favor of Secured Party and/or General Electric Capital Corporation;

(c) Lessor has adequate power and capacity to enter into, and to perform its obligations under, each of the Debt Documents and has full right and lawful authority to grant the security interests and "international interests" described in this Agreement (including within the meaning of Article 7(b) of the Convention). The Debt Documents have been duly authorized, executed and delivered by Lessor and constitute legal, valid and binding agreements enforceable under all applicable laws in accordance with their terms, except to the extent that the enforcement of remedies may be limited under applicable bankruptcy and insolvency laws;

9017K23_2

(d)   No approval, consent or withholding of objections is required from and no notice is required to be given to any governmental authority or instrumentality or any other person or entity with respect to the entry into, or performance by, Lienor of any of the Debt Documents, except such as have already been obtained;

(e)   The entry into, and performance by, Lienor of the Debt Documents will not (i) violate any of Lienor's organizational documents or any judgment, order, law or regulation applicable to Lienor, or (ii) result in any breach of, constitute a default under, or result in the creation of, any Lien, on any of Lienor's property (except for Liens in favor of Secured Party) pursuant to, any indenture mortgage, deed of trust, bank loan, credit agreement, or other agreement or instrument to which Lienor is a party;

(f)   There are no suits or proceedings pending or threatened in court or before any commission, board or other administrative agency against or affecting Lienor which could, in the aggregate, have a material adverse effect on Lienor, its business or operations, or its ability to perform its obligations under the Debt Documents;

(g)   All financial statements delivered to Secured Party in connection with the Obligations have been prepared in accordance with generally accepted accounting principles, and since the date of the most recent financial statement there has been no material adverse change in Lienor's financial condition or business prospects;

(h)   Lienor is (or, to the extent that the Aircraft is to be acquired hereafter, will be) and will remain the sole lawful owner, in sole, open and notorious possession of the Aircraft, free from any Lien whatsoever other than those in favor of Secured Party and/or General Electric Capital Corporation. Lienor shall warrant and defend title to the Aircraft against all claims and demands of all other persons claiming any interest therein and shall not create, incur or suffer to exist any Lien or any Irrevocable De-Registration and Export Request Authorization ("IDERA") with respect to the Aircraft filed or to be filed with the International Registry, the FAA or elsewhere, other than those in favor of Secured Party and/or General Electric Capital Corporation;

(i)   Lienor shall promptly pay or cause to be paid all taxes, license fees, assessments and public and private charges, that are or may be levied or assessed on or against the Aircraft or the ownership or use thereof, or on this Agreement;

(j)   If at the time of Lienor's execution of this Agreement, Lienor is not the registered owner of the Aircraft, as shown in the records of the United States Federal Aviation Administration ("FAA"), Lienor at its own expense shall immediately register the Aircraft in its name with the FAA and, so long as any Obligation is due to Secured Party, Lienor shall not impair, suspend or cancel such registration or cause it to be impaired, suspended or cancelled, nor register the Aircraft under the laws of any country except the United States of America;

(k)   Lienor shall promptly notify Secured Party of any facts or occurrences, which do or, with the passage of time or giving of notice or both will, constitute a breach of any of the above warranties and covenants or an Event of Default hereunder;

(l)   Lienor is and will remain in full compliance with all laws and regulations applicable to it including, without limitation, (i) ensuring that no person who owns a controlling interest in or otherwise controls Lienor is or shall be (Y) listed on the Specially Designated Nationals and Blocked Person List maintained by the Office of Foreign Assets Control ("OFAC"), Department of the Treasury, and/or any other similar lists maintained by OFAC pursuant to any authorizing statute, Executive Order or regulation or (Z) a person designated under Section 1(b), (c) or (d) of Executive Order No. 13224 (September 23, 2001), any related enabling legislation or any other similar Executive Orders, and (ii) compliance with all applicable Bank Secrecy Act ("BSA") laws, regulations and government guidance on BSA compliance and on the prevention and detection of money laundering violations;

(m)   For purposes of the Cape Town Convention, Lienor is a "transacting user entity" for purposes of the International Registry, has identified an "administrator", has appointed a "professional user entity" satisfactory to Secured Party and has paid all required fees and taken all other actions necessary to enable Secured Party to register any "international interest" (including the "contract of sale" interest in favor of Lienor as against seller, as applicable) or other filing necessary or advisable to perfect or protect the Secured Party's interests created hereby or by any Debt Document with the International Registry. The description of the Aircraft (including the make, model, serial number and registration number) set forth above is true, correct and complete.

(n)   Lienor shall immediately upon acquiring title to the Aircraft depart Arizona in compliance with the Arizona fly away exemption.

4.   Further Assurances.   Lienor will promptly, upon Secured Party's request and at Lienor's sole cost and expense, execute, or otherwise authenticate, any document, record or instrument necessary or expedient for filing, recording, protecting or perfecting the interest of Secured Party in the Aircraft or otherwise created hereby or by the other Debt Documents (including UCC, FAA, Cape Town Convention filings or other applicable filings and filings to evidence corrections, amendments, terminations and acknowledgments of assignment), and will take such other further action as Secured Party may reasonably request in order to carry out more effectively the intent and purposes of this Agreement and the other Debt Documents and to establish and protect Secured Party's rights and remedies under this Agreement, the other Debt Documents, or otherwise with respect to the Aircraft. In addition, Lienor hereby expressly authorizes each of Secured Party, Secured Party's designated FAA escrow agent (which may be FAA counsel) and Lienor's "professional user entity" to file a UCC-1 financing statement, the FAA Bill of Sale, AC Form 8050-1 Aircraft Registration Form, the AC Form 8050-135 FAA Entry Point Filing Form and any other documents evidencing Lienor's ownership of the Aircraft and the "international interests" (as defined under the Cape Town Convention) and any other interests created by this Agreement and the other Debt Documents in favor of Secured Party, in each case describing the Aircraft and any engines, attachments, appurtenances and parts relating thereto and containing any other information required by or advisable under the applicable Uniform Commercial Code, FARs, Cape Town Convention and any other applicable law, treaty or regulation. At the request of Secured Party following any expiration or termination of this Agreement and the other Debt Documents, Lienor shall, at Lienor's sole cost and expense, execute and deliver to Secured Party, for filing with the FAA and/or the International Registry, as applicable, such documents as Secured Party shall require to evidence and confirm the expiration or termination of this Agreement and the release of the Aircraft from the terms and conditions hereof, and if Lienor fails for any reason to execute and deliver such documents to Secured Party, Lienor hereby irrevocably consents to and authorizes Secured Party to sign Lienor's name to such documents and to file (and/or instruct Lienor's "professional user entity" to

file) such documents with the FAA and/or the International Registry, as applicable.  Lessor hereby ratifies its prior authorization for Secured Party to make filings (including financing statements) and amendments thereto describing the Aircraft and containing any other information required by any applicable law (including without limitation the Uniform Commercial Code) if filed prior to the date hereof.  Lessor will, at Lessor's sole cost and expense, cooperate with Secured Party in connection with the execution and filing of a notice of all interests or other related applications, registrations, amendments or deregistrations with the International Registry, as requested by Secured Party from time to time.  Other than as expressly provided herein, Lessor shall not file any filings (including any corrective, amendment or termination filings) or financing statements relating to the Aircraft or the interests created hereby, without Secured Party's prior written consent.

5.   Use, Operation, Maintenance, Repair, Storage and Registration.   Lessor shall use, operate, maintain, store and repair the Aircraft and retain actual and operational control and possession thereof in compliance with the following provisions:

   (a)   Lessor shall use, operate, maintain and store the Aircraft, and every part thereof, properly, carefully and in compliance with all applicable statutes, ordinances and regulations of all jurisdictions in which the Aircraft is operated or used, as well as all applicable insurance policies, manufacturer's recommendations and operating and maintenance manuals.  Lessor shall use the Aircraft predominantly for business purposes and only for the purposes and in the manner set forth in the application for insurance executed at the time of negotiating the purchase of the Aircraft.  At all times during the term of this Agreement, Lessor shall not operate or locate the Aircraft, or suffer or permit the Aircraft to be operated, located, or otherwise permitted to go into or over (i) any country or jurisdiction that does not maintain full diplomatic relations with the United States, (ii) any geographic area which is not covered by the insurance policies required by this Agreement, or (iii) any jurisdiction or nation wherein the operation or location thereof would violate any applicable law, regulation, or restriction , including, but not limited to, the U.S. Export Administration Regulations and the U.S. International Traffic in Arms Regulation.  The engines identified in Section 1 of this Agreement shall be used only on the airframe described in that Section and shall only be removed for maintenance in accordance with the provisions of this Agreement.  Lessor shall not use, attempt to use, or suffer the Aircraft to be used in any manner which may or does contravene any applicable law, rule or regulation governing the Aircraft, including without limitation those relating to intoxicating liquors, narcotics, firearms or similar products.  Lessor shall not attempt to sell, lease, charter, rent, assign or dispose of the Aircraft, or any interest herein or therein, or any part thereof, without Secured Party's prior written consent and, if the Cape Town Convention is effective at such time, without making all filings and registrations with the International Registry deemed necessary or advisable by Secured Party to protect its interest herein and in the Aircraft.

   (b)   The Aircraft will be operated at all times by a currently certificated pilot having the minimum total pilot hours and minimum pilot-in-command hours required by FAA rules or regulations or as required by applicable insurance policies, whichever requirements are stricter.  Lessor shall be responsible for and pay for all expenses of owning and operating the Aircraft, including but not limited to storage, fuel, lubricants, service, inspections, overhauls, replacements, maintenance and repairs, all in compliance with the manufacturer's operating and maintenance manuals and with FAA rules and regulations.  Lessor shall properly maintain all records and other materials pertaining to the maintenance and operation of the Aircraft, including but not limited to those required by applicable law, rule or regulation and by the manufacturer for the enforcement of any warranty.

   (c)   The Aircraft is and shall at all times be maintained by Lessor at its expense in good repair in the configuration and condition existing on the date hereof and in airworthy condition necessary for all aircraft licenses under the laws, ordinances, rules and regulations of all jurisdictions in which the Aircraft will at any time be operated.  Lessor shall ensure timely compliance with all applicable mandatory Service Bulletins, Service Letters, Manufacturer's Directives and Airworthiness Directives.  Lessor shall submit written evidence of such maintenance and condition to Secured Party upon its written request from time to time.  Lessor shall use reasonable care to prevent the Aircraft from being damaged or injured, and shall promptly replace any part or component of the Aircraft which may be damaged, worn out, lost, destroyed, confiscated or otherwise rendered unsatisfactory or unavailable for use in or upon the Aircraft.

   (d)   The Aircraft shall at all times have the same utility and quality as that which it originally had.  Lessor shall at its expense timely make any alterations or modifications to the Aircraft that may at any time during the term of this Agreement be required to maintain the Aircraft in the condition required by this Agreement.  Lessor shall in no way alter, attempt to alter or otherwise change the identity or appearance of the Aircraft, including but not limited to the "N" number, exterior paint and symbols, without the express prior written consent of Secured Party.

   (e)   The international interest created by this Agreement in the Aircraft pursuant to the provisions of the Cape Town Convention shall be registered with the International Registry, and Lessor hereby consents to such registration and authorizes Secured Party to effect all such registrations with the International Registry.  No international interest created in favor of Secured Party shall be discharged without the prior written consent of Secured Party.

6.   Indemnification and Insurance.

   (a)   Lessor shall indemnify and save Secured Party and its affiliates and all of Secured Party's and such affiliates' respective directors, shareholders, officers, employees, agents, predecessors, attorneys-in-fact, lawyers, successors and assigns (each an "Indemnitee") on a real after-tax basis harmless from and against all claims, costs, expenses (including legal fees), demands, suits, damages and liabilities of any kind and nature whatsoever, including without limitation personal injury, death and property damage claims arising in tort or otherwise, under any legal theory including but not limited to strict liability (including Claims involving or alleging environmental damage, criminal acts, hijacking, acts of terrorism or similar acts, product liability or strict or absolute liability in tort, latent and other defects (whether or not discoverable), for patent, trademark or copyright infringement)(collectively, "Claims") that may be imposed on, incurred by or asserted against any Indemnitee whether or not such Indemnitee shall also be indemnified as to any such Claim by any other Person in any way relating to, arising out of or in connection with (a) the Debt Documents, including, without limitation, the execution, delivery, breach (including any Event of Default), enforcement, performance or administration of the Debt Documents and (b) the Aircraft, including, without limitation, the perfection, maintenance, protection, deregistration or realization upon the Aircraft or any other security for the Obligations, and the manufacture, inspection, construction, purchase, acceptance, rejection, ownership, management, pooling, interchange, chartering, titling or re-titling, delivery, lease, sublease, possession, use, operation,

9017823_2

maintenance, condition, registration or re-registration, sale, removal, repossession, storage or other disposition of the Aircraft or any part thereof or any accident in connection therewith. Notwithstanding the foregoing, Lienor shall not be required to indemnify an Indemnitee for any Claim caused solely and directly by the gross negligence or willful misconduct of such Indemnitee.

(b)   Lienor shall at all times bear all risk of loss, damage, destruction or confiscation of or to the Aircraft. Lienor shall secure and maintain in effect, at its own expense and at all times, insurance against such hazards and for such risks as Secured Party may require. Without limiting the generality of the foregoing, Lienor shall secure and maintain: (i) all-risk aircraft hull and engine insurance (including, without limitation, with respect to engines or part thereof while removed from the Aircraft and foreign object damage insurance) in an amount which is not less than the principal amount of the Obligations evidenced by the Debt Documents; and (ii) confiscation, expropriation and war risk and allied perils (including, without limitation, terrorism) insurance and hijacking insurance in an amount which is, for physical damage, not less than the principal amount of the Obligations evidenced by the Debt Documents for any single occurrence. All such policies shall include standard loss payable clause and breach of warranty endorsement in favor of Secured Party and shall be under such forms and upon such terms, for such periods and with such companies or underwriters as Secured Party may approve, losses or refunds in all cases to be first payable to Secured Party or its assigns, as its interest may appear. Notwithstanding any provision of this Agreement to the contrary, failure to obtain Secured Party's approval of any insurer or policy shall not excuse Lienor from its obligation to maintain insurance coverage. All insurance policies shall provide for at least 30 days prior written notice to Secured Party of any cancellation or material modification, shall contain a severability of interest clause providing that such policy shall operate in the same manner as if a separate policy covered each insured, shall waive any right of set-off against Lienor or Secured Party, shall waive any right of subrogation against Secured Party and shall be primary and not subject to any offset by any other insurance carried by Lienor or Secured Party. Lienor shall pay any deductible portion of such insurance and any expense incurred in collecting insurance proceeds. Lienor shall furnish to Secured Party copies of all insurance policies required by this paragraph. Lienor hereby assigns to Secured Party the proceeds of all such insurance (including any refund of premium) to the extent of the Obligations secured hereby, directs the insurer to pay any losses or refunds due Lienor directly to Secured Party, and appoints Secured Party as attorney-in-fact to make proof of loss and claim for all insurance and refunds thereupon and to endorse all documents, contracts drafts, checks or forms of payment of insurance or premiums. Secured Party may at its option apply insurance proceeds, in whole or in part, to (i) repair or replace the Aircraft or any part thereof or (ii) satisfy any of Lienor's Obligations to Secured Party. Any surplus proceeds shall be paid to Lienor.

7.   **Lienor's Possession.** Until default, Lienor may possess the Aircraft and use it in any lawful manner not inconsistent with this Agreement. Lienor shall at all times keep the Aircraft and any proceeds therefrom separate and distinct from other property of Lienor and Secured Party and complete records of the Aircraft and all such proceeds. Secured Party may examine and inspect the Aircraft, wherever located, at any reasonable time, on land and in flight.

8.   **Default.** Lienor shall be in default under this Agreement and each of the other Debt Documents upon the occurrence of any of the following "Events of Default":

(a)   Lienor or Debtor fails to pay within 10 days after its due date any installment or other amount due under any of the Debt Documents;

(b)   Lienor fails to maintain at all times insurance coverage as required by paragraph 6(b) of this Agreement;

(c)   Any attempt by Lienor or Debtor, without the prior written consent of Secured Party, to sell all or any fractional interest in, rent, lease, charter, mortgage, assign, entering into any pooling or interchange agreements, grant a Lien in or grant any time-shares with respect to or otherwise deliver possession of (except for maintenance purposes), transfer or encumber the Aircraft (or any part thereof) or Lienor's improper filing of any "international interest" or other filing with the International Registry or the FAA or any financing statement (including any amendment or termination of any of the foregoing) or any failure by Lienor to remove any Lien, other than those in favor of Secured Party;

(d)   Lienor or Debtor breaches any of its Obligations under any Debt Document (other than those described by Section 8(a) through (c)) and fails to cure such breach within 30 days after Secured Party gives Lienor written notice thereof;

(e)   Any warranty, representation or statement made by Lienor, Debtor or any guarantor or surety for the Obligations in any of the Debt Documents or otherwise in connection with any of the Obligations is false or misleading in any material respect;

(f)   Lienor, Debtor or any guarantor or surety for the Obligations dies, becomes insolvent or ceases to do business as a going concern; -

(g)   The Aircraft or any other property of Lienor is confiscated, sequestered, seized or levied upon;

(h)   The Aircraft or any engine is lost, damaged, stolen, arrested, abused, illegally used, misused, rendered inaccessible (geographically or otherwise) or destroyed, unless with respect to the engine Lienor replaces same with an engine of the same make, model and fair market value as confirmed by independent appraisal within 60 days of the date the engine is lost, damaged, stolen, arrested, abused, illegally used, misused, rendered inaccessible (geographically or otherwise) or destroyed;

(i)   Any part of the Aircraft (which would cost more than the lesser of (i) ten percent (10%) of the original loan balance or (ii) $250,000 to repair or replace) is damaged, lost, stolen or destroyed, unless such part is replaced or repaired in a good, workmanlike manner within 60 days of the date that such part is damaged, lost, stolen or destroyed and the fair market value of the Aircraft (as confirmed by an independent appraisal) has been restored to the fair market value of the Aircraft prior to any such damage, loss, theft or destruction (assuming the Aircraft had been maintained in accordance with the provisions herein) ;

(j)   Lienor, Debtor or any guarantor of or surety for the Obligations is declared in default under any contract or obligation requiring the payment of money in an original principal amount greater than $50,000;

(k)   The occurrence of any default under any other agreement between Lienor, Debtor and/or any parent entities or affiliates (on the one hand) and Secured Party (or any of its affiliates or parent entities)(on the other hand);

(l) Lienor, Debtor or any guarantor of or surety for the Obligations makes an assignment for the benefit of creditors, applies to or petitions any tribunal for the appointment of a custodian, receiver or trustee for itself or for any substantial part of its property, or commences any proceeding under any bankruptcy, reorganization, arrangement, readjustment of debt, dissolution or liquidation law or statute of any jurisdiction, or if any such petition or application is filed or any such proceeding is commenced against Lienor, Debtor or any guarantor or surety, and such petition, application or proceeding is not dismissed within 30 days, or Lienor, Debtor or any such guarantor or surety by any act or omission shall indicate its consent to, approval of or acquiescence in any such petition, application, proceeding, order for relief or such appointment of a custodian, receiver or trustee;

(m) Lienor, Debtor or any guarantor of or surety for the Obligations conceals or removes, or permits to be concealed or removed, any part of its assets, so as to hinder, delay or defraud any of its creditors, or makes or suffers a transfer of any of its assets which would be fraudulent under any bankruptcy, insolvency, fraudulent conveyance or similar law or makes any transfer of its assets to or for the benefit of a creditor at a time when other creditors similarly situated have not been paid, or suffers or permits, while insolvent, any creditor to obtain a lien upon any of Lienor's, Debtor's or any guarantor's or surety's property through legal proceedings or distraint, or if a tax lien is filed against Lienor, Debtor or any guarantor or surety;

(n) Any guarantor revokes or attempts to revoke its guaranty of any of the Obligations or fails to observe or perform any covenant, condition or agreement to be performed under any guaranty or other related document to which it is a party;

(o) The occurrence of any merger or consolidation involving Lienor, Debtor or any guarantor or surety of Lienor, any sale by Lienor, Debtor or such guarantor or surety of all or substantially all of its assets or any change in control has occurred with respect to Lienor, Debtor or any guarantor or surety.

(p) The occurrence of any Event of Default under the Loan Agreement.

**9. Remedies of Secured Party:**

(a) Upon the occurrence of any Event of Default under this Agreement, Secured Party, at its option, may declare any or all of the Obligations, including but not limited to amounts owing under the Loan Agreement, to be immediately due and payable, without demand or notice to Lienor, Debtor or any guarantor. The Obligations and liabilities accelerated thereby shall bear interest from the Event of Default (both before and after any judgment) until paid in full at a per annum rate equal to the lower of eighteen percent (18%) or the maximum rate not prohibited by applicable law (the "Per Diem Interest Rate"). The application of such Per Diem Interest Rate shall not be interpreted or deemed to extend any cure period set forth herein, cure any default or otherwise limit Secured Party's right or remedies hereunder. Notwithstanding anything to the contrary contained herein, in no event shall this Agreement require the payment or permit the collection of amounts in excess of the maximum permitted by applicable law.

(b) Upon the occurrence of any Event of Default, Secured Party shall additionally have all of the rights and remedies of a secured party under the Uniform Commercial Code, the Cape Town Convention and under any other applicable law. Without limiting the foregoing and without notice or demand, Secured Party shall have the right at its option to immediately exercise one or more of the following remedies: (i) refuse to extend any credit to Debtor; (ii) terminate this Agreement immediately without notice; (iii) take immediate and exclusive possession of the Aircraft, wherever it may be found; (iv) enter any of Lienor's or Debtor's premises, with or without process of law, wherever the Aircraft may be or Secured Party reasonably believes it to be, and search for it, and if the Aircraft or any part of it is found, to take possession of and remove it; (v) sell, lease and otherwise dispose of the Aircraft or any part of it, at public auction or private sale, for cash or on credit, as Secured Party may elect at its option and Secured Party shall have the right to bid and become the purchaser at any such sale, or keep the Aircraft idle; (vi) direct Lienor to assemble all parts and components of the Aircraft and deliver it to Secured Party, at Lienor's expense, at a place designated by Secured Party which is reasonably convenient to Secured Party and Lienor; (vii) hold, appropriate, apply or set-off any and all moneys, credits and indebtedness due from Secured Party, its affiliates, parents or subsidiaries, to Lienor or Debtor; (viii) exercise any rights it may have against any security deposit or other collateral pledged to it by Lienor, Debtor, Guarantor or any of their affiliates or parent entities and/or (ix) exercise any rights or remedies it may have under applicable law, including any rights to procure export and physical transfer of the Aircraft from the territory in which it is situated or de-register the Aircraft (pursuant to an IDERA or otherwise) and any rights to obtain from any court speedy relief pending final determination available at law (including possession, control, custody, or immobilization of the Aircraft or requiring Lienor to preserve the Aircraft or its fair market value. Upon exercise of Secured Party's dispossessory remedies hereunder or under applicable law, Lienor hereby agrees that ownership of the Aircraft shall vest in Secured Party.

(c) Lienor shall pay all actual costs incurred by Secured Party in collecting any of the Obligations owed Secured Party by Lienor and enforcing any Obligations of Lienor to Secured Party, including but not limited to actual attorneys' fees and legal expenses.

(d) Notwithstanding the availability of any other remedy and in addition thereto, if Lienor fails to perform any of its Obligations hereunder or under any of the Debt Documents, Secured Party may perform the same, but shall not be obligated to do so, for the account of Lienor, and Lienor shall immediately repay to Secured Party on demand any amounts paid or incurred by Secured Party in such performance together with interest thereon accrued from the date paid or incurred by Secured Party until repaid in full by Lienor at the lesser of one and one half percent (1 1/2%) per month and the maximum interest rate permitted by applicable law to be charged Lienor by Secured Party.

(e) Notwithstanding any other provision hereof to the contrary, any notice required to be given by law or pursuant to this Agreement with respect to disposition of the Aircraft or any part of it shall be deemed reasonably and properly given if mailed by post, by prepaid express mail service (private or government) or by hand delivery to Lienor at its last known address, at least ten (10) days before the disposition of the subject matter of such notification.

(f) Secured Party shall have the right to apply any amounts collected from Lienor or Guarantor pursuant to this Section 9 or under the Guaranty in the following order of priorities: (i) to pay all of Secured Party's costs, charges and expenses incurred in enforcing its rights under this Agreement or in taking, removing, holding, repairing, refurbishing, selling, leasing or otherwise disposing of the Aircraft; then, (ii) to pay any and all late fees, per diem fees, other such charges due hereunder, any and all interest due hereunder and all amounts owing pursuant to any indemnity claims; then (iii) to pay all principal due hereunder; then (iv) to pay all other amounts due and owing to Secured Party under any of the Debt Documents. Secured Party shall have the right to any proceeds of sale,

here or other disposition of the Aircraft, if any, and shall have the right to apply same in the following order of priorities: (i) to pay all of Secured Party's costs, charges and expenses incurred in enforcing its rights under this Agreement or in taking, removing, holding, repairing, refurbishing, selling, leasing or otherwise disposing of the Aircraft; then, (ii) to pay any and all late fees, per diem fees, other such charges due hereunder, any and all interest due hereunder  and any amounts owing pursuant to any indemnity clause; then (iii) to pay all principal due hereunder; then (iv) to pay all other amounts due and owing to Secured Party under any of the Debt Documents; then (v) any surplus shall be refunded to Lienor.  Lienor shall pay any deficiency in (i), (ii), (iii) and (iv) immediately upon demand.

(g)   The foregoing remedies shall not be exclusive or alternative but shall be cumulative and in addition to all other remedies in favor of Secured Party existing at law, in equity or under any applicable statute or international treaty, convention or protocol.

10. Principals and Waivers.  All signers and endorsers hereof are to be regarded as principals, jointly and severally.  Every maker, endorser, guarantor and surety hereof hereby waives presentment, notice, protest and impairment of collateral, and consents to all extensions, deferrals, partial payments and refinancings hereof before or after maturity.  No waiver by Secured Party of any default shall operate as a waiver of any other default or of the same default on a future occasion.

11. Reports.

(a)   Lienor shall promptly notify Secured Party (i) at least 30 days' prior to any change in Lienor's name or in the state of its incorporation or registration or its "contracting state" (for purposes of the Cape Town Convention), (ii) at least 30 days' prior to any change in the "location" of Lienor for purposes of the Uniform Commercial Code, (iii) at least 30 days' prior to any permanent or indefinite relocation of the Aircraft or its home airport, (iv) immediately upon the Aircraft being lost, stolen, missing, confiscated, appropriated, seized, sequestered, destroyed or materially damaged, (v) immediately upon any accident involving the Aircraft or (vi) immediately upon Lienor becoming aware of any Lien attaching or being made against the Aircraft (other than Liens in favor of Secured Party).  Such notice shall contain all pertinent details of the event being reported, and shall be supplemented promptly upon Secured Party's request.

(b)   Lienor agrees to furnish its annual financial statements and such interim statements as Secured Party may require in form satisfactory to Secured Party.  Any and all financial statements submitted and to be submitted to Secured Party have and will have been prepared on a basis of generally accepted accounting principles consistently applied, and are and will be complete and correct and fairly present Lienor's financial condition as at the date thereof.  Secured Party may at any reasonable time examine Lienor's books and records and make copies thereof.

12. Miscellaneous.

(a)   This Agreement, the Loan Agreement and/or any of the other Debt Documents may be assigned, in whole or in part, by Secured Party without notice to Lienor and Lienor hereby consents to any and all such assignments (for all purposes, including for purposes of the Cape Town Convention) and waives any and all rights it might have under applicable law to any prior notice thereof.  Lienor agrees that if Lienor receives written notice of an assignment from Secured Party, Lienor will pay all amounts payable under this Agreement or any Debt Document to such assignee or as instructed by Secured Party.  Lienor also agrees to confirm in writing receipt of the notice of assignment as may be reasonably requested by assignee and shall cooperate with Secured Party and any such assignee in delivering to such assignee a certificate of insurance reflecting assignee as loss payee and additional insured.

(b)   All notices to be given in connection with this Agreement and the Debt Documents shall be in writing in English, shall be addressed to the parties at their respective addresses set forth hereinabove (unless and until a different address may be specified in a written notice to the other party), and shall be deemed given (i) on the date of receipt if delivered in hand or by facsimile transmission, (ii) on the next business day after being sent by express mail (government or private), and (iii) on the fourth business day after being sent by regular, registered or certified mail.  As used herein, "business day" means any day other than a Saturday, a Sunday, or other day on which commercial banks in New York, New York are required or authorized to be closed.

(c)   Secured Party may correct patent errors herein and fill in all blanks herein or in the Debt Documents consistent with the agreement of the parties.

(d)   Time is of the essence hereof.  This Agreement and the Debt Documents shall be binding, jointly and severally, upon all parties described as the "Lienor" and their respective heirs, executors, representatives, successors and assigns, and shall inure to the benefit of Secured Party, its successors and assigns.

(e)   The unenforceability of any provision hereof or of the Debt Documents shall not affect the validity of any other provision hereof or thereof.

(f)   Lienor hereby acknowledges and agrees that Secured Party reserves the right to impose fees or charges for returned checks and certain optional services that Secured Party may offer or provide to Lienor during the term of this Agreement.  Secured Party will notify Lienor the amount of the applicable fee or charge if Lienor requests such optional services.  In addition, Secured Party may make available to Lienor a schedule of fees or charges for such optional services from time to time or upon demand, provided, however, that such fees and charges are subject to change in Secured Party's sole discretion without notice to Lienor.

(g)   This Agreement and the Debt Documents constitute the entire agreement between the parties with respect to the subject matter hereof and supersede all prior understandings (whether written, oral or implied) with respect thereto, except representations made by Lienor to Secured Party.  THIS AGREEMENT AND THE DEBT DOCUMENTS SHALL NOT BE CHANGED OR TERMINATED, NOR SHALL ANY WAIVER BE GIVEN, ORALLY OR BY COURSE OF CONDUCT, BUT ONLY BY A WRITING SIGNED BY BOTH PARTIES HERETO.  Section headings in this Agreement are for convenience only, and shall not affect the construction or interpretation hereof.

(h)   LIENOR HEREBY UNCONDITIONALLY WAIVES ITS RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF, DIRECTLY OR INDIRECTLY, THIS AGREEMENT, ANY OF THE DEBT DOCUMENTS, ANY DEALINGS BETWEEN LIENOR AND SECURED PARTY RELATING TO THE SUBJECT MATTER OF THIS TRANSACTION OR ANY RELATED TRANSACTIONS, AND/OR THE RELATIONSHIP THAT IS BEING ESTABLISHED BETWEEN LIENOR AND SECURED PARTY.  THE SCOPE OF THIS WAIVER IS INTENDED TO

.9017823_2

BE ALL ENCOMPASSING OF ANY AND ALL DISPUTES THAT MAY BE FILED IN ANY COURT (INCLUDING, WITHOUT LIMITATION, CONTRACT CLAIMS, TORT CLAIMS, BREACH OF DUTY CLAIMS, AND ALL OTHER COMMON LAW AND STATUTORY CLAIMS). THIS WAIVER IS IRREVOCABLE MEANING THAT IT MAY NOT BE MODIFIED EITHER ORALLY OR IN WRITING, AND THE WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS TO THIS AGREEMENT, ANY RELATED DOCUMENTS, OR TO ANY OTHER DOCUMENTS OR AGREEMENTS RELATING TO THIS TRANSACTION OR ANY RELATED TRANSACTION. IN THE EVENT OF LITIGATION, THIS AGREEMENT MAY BE FILED AS A WRITTEN CONSENT TO A TRIAL BY THE COURT.

(i)    This Agreement shall continue in full force and effect until all of the Obligations have been indefeasibly paid in full to Secured Party. This Agreement shall automatically be reinstated in the event that Secured Party is ever required to return or restore the payment of all or any portion of the Obligations (all as though such payment had never been made).

(j)    THIS AGREEMENT AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES HEREUNDER SHALL IN ALL RESPECTS BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH, THE INTERNAL LAWS OF THE STATE OF NEW YORK, INCLUDING ALL MATTERS OF CONSTRUCTION, VALIDITY AND PERFORMANCE, REGARDLESS OF THE LOCATION OF THE AIRCRAFT. LIENOR IRREVOCABLY SUBMITS TO THE EXCLUSIVE JURISDICTION OF THE STATE AND FEDERAL COURTS LOCATED IN THE STATE OF NEW YORK TO HEAR AND DETERMINE ANY SUIT, ACTION OR PROCEEDING AND TO SETTLE ANY DISPUTES, WHICH MAY ARISE OUT OF OR IN CONNECTION HEREWITH (COLLECTIVELY, THE "PROCEEDINGS"), AND LIENOR FURTHER IRREVOCABLY WAIVES ANY RIGHT IT MAY HAVE TO REMOVE ANY SUCH PROCEEDINGS FROM ANY SUCH COURT (EVEN IF REMOVAL IS SOUGHT TO ANOTHER OF THE ABOVE-NAMED COURTS). LIENOR IRREVOCABLY WAIVES ANY OBJECTION WHICH IT MIGHT NOW OR HEREAFTER HAVE TO THE ABOVE-NAMED COURTS BEING NOMINATED AS THE EXCLUSIVE FORUM TO HEAR AND DETERMINE ANY SUCH PROCEEDINGS AND AGREES NOT TO CLAIM THAT IT IS NOT PERSONALLY SUBJECT TO THE JURISDICTION OF THE ABOVE-NAMED COURTS FOR ANY REASON WHATSOEVER, THAT IT OR ITS PROPERTY IS IMMUNE FROM LEGAL PROCESS FOR ANY REASON WHATSOEVER, THAT ANY SUCH COURT IS NOT A CONVENIENT OR APPROPRIATE FORUM IN EACH CASE WHETHER ON THE GROUNDS OF VENUE OR FORUM NON-CONVENIENS OR OTHERWISE. LIENOR ACKNOWLEDGES THAT BRINGING ANY SUCH SUIT, ACTION OR PROCEEDING IN ANY COURT OTHER THAN THE COURTS SET FORTH ABOVE WILL CAUSE IRREPARABLE HARM TO SECURED PARTY WHICH COULD NOT ADEQUATELY BE COMPENSATED BY MONETARY DAMAGES, AND, AS SUCH, LIENOR AGREES THAT, IN ADDITION TO ANY OF THE REMEDIES TO WHICH SECURED PARTY MAY BE ENTITLED AT LAW OR IN EQUITY, SECURED PARTY WILL BE ENTITLED TO AN INJUNCTION OR INJUNCTIONS (WITHOUT THE POSTING OF ANY BOND AND WITHOUT PROOF OF ACTUAL DAMAGES) TO ENJOIN THE PROSECUTION OF ANY SUCH PROCEEDINGS IN ANY OTHER COURT. Notwithstanding the foregoing, each of Lienor and Secured Party shall have the right to apply to a court of competent jurisdiction in the United States or abroad for equitable relief as is necessary to preserve, protect and enforce their rights under this Agreement, including but not limited to orders of attachment or injunction necessary to maintain the status quo pending litigation or to enforce judgments against Lienor, any Guarantor or the Aircraft or to gain possession of the Aircraft.

(k)    This Agreement may be executed in any number of counterparts, all of which taken together shall constitute one and the same instrument, and either of the parties hereto may execute this Agreement by signing any such counterpart.

(l)    Lienor hereby expressly waives the provisions of Articles 11(2) and 13(2) of the Convention and Article IX(6) of the Protocol.

SECURED PARTY:

GE Commercial Australasia Pty Ltd

By: _____

Name: _DAVID HENDERSON_

Title: _Associate Director Risk._

GE Commercial Corporation (Australia) Pty Ltd

By: _____

Name: _DAVID HENDERSON_

Title: _Associate Director Risk_

LIENOR:

Wells Fargo Bank Northwest NA as Owner Trustee

By: _____

Name: _____

Title: _____

9017823_2

DOCUMENTS, OR TO ANY OTHER DOCUMENTS OR AGREEMENTS RELATING TO THIS TRANSACTION OR ANY RELATED TRANSACTION. IN THE EVENT OF LITIGATION, THIS AGREEMENT MAY BE FILED AS A WRITTEN CONSENT TO A TRIAL BY THIS COURT.

(i)   This Agreement shall continue in full force and effect until all of the Obligations have been indefeasibly paid in full to Secured Party. This Agreement shall automatically be reinstated in the event that Secured Party is ever required to return or restore the payment of all or any portion of the Obligations (all as though such payment had never been made).

(j)   THIS AGREEMENT AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES HEREUNDER SHALL IN ALL RESPECTS BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH, THE INTERNAL LAWS OF THE STATE OF CONNECTICUT, INCLUDING ALL MATTERS OF CONSTRUCTION, VALIDITY AND PERFORMANCE, REGARDLESS OF THE LOCATION OF THE AIRCRAFT. LIENOR IRREVOCABLY SUBMITS TO THE EXCLUSIVE JURISDICTION OF THE STATE AND FEDERAL COURTS LOCATED IN THE STATE OF CONNECTICUT TO HEAR AND DETERMINE ANY SUIT, ACTION OR PROCEEDING AND TO SETTLE ANY DISPUTES, WHICH MAY ARISE OUT OF OR IN CONNECTION HEREWITH (COLLECTIVELY, THE "PROCEEDINGS"), AND LIENOR FURTHER IRREVOCABLY WAIVES ANY RIGHT IT MAY HAVE TO REMOVE ANY SUCH PROCEEDINGS FROM ANY SUCH COURT (EVEN IF REMOVAL IS SOUGHT TO ANOTHER OF THE ABOVE-NAMED COURTS). LIENOR IRREVOCABLY WAIVES ANY OBJECTION WHICH IT MIGHT NOW OR HEREAFTER HAVE TO THE ABOVE-NAMED COURTS BEING NOMINATED AS THE EXCLUSIVE FORUM TO HEAR AND DETERMINE ANY SUCH PROCEEDINGS AND AGREES NOT TO CLAIM THAT IT IS NOT PERSONALLY SUBJECT TO THE JURISDICTION OF THE ABOVE-NAMED COURTS FOR ANY REASON WHATSOEVER, THAT IT OR ITS PROPERTY IS IMMUNE FROM LEGAL PROCESS FOR ANY REASON WHATSOEVER, THAT ANY SUCH COURT IS NOT A CONVENIENT OR APPROPRIATE FORUM IN EACH CASE WHETHER ON THE GROUNDS OF VENUE OR FORUM NON-CONVENIENS OR OTHERWISE. LIENOR ACKNOWLEDGES THAT BRINGING ANY SUCH SUIT, ACTION OR PROCEEDING IN ANY COURT OTHER THAN THE COURTS SET FORTH ABOVE WILL CAUSE IRREPARABLE HARM TO SECURED PARTY WHICH COULD NOT ADEQUATELY BE COMPENSATED BY MONETARY DAMAGES, AND, AS SUCH, LIENOR AGREES THAT, IN ADDITION TO ANY OF THE REMEDIES TO WHICH SECURED PARTY MAY BE ENTITLED AT LAW OR IN EQUITY, SECURED PARTY WILL BE ENTITLED TO AN INJUNCTION OR INJUNCTIONS (WITHOUT THE POSTING OF ANY BOND AND WITHOUT PROOF OF ACTUAL DAMAGES) TO ENJOIN THE PROSECUTION OF ANY SUCH PROCEEDINGS IN ANY OTHER COURT. Notwithstanding the foregoing, each of Lienor and Secured Party shall have the right to apply to a court of competent jurisdiction in the United States or abroad for equitable relief as is necessary to preserve, protect and enforce their rights under this Agreement, including but not limited to orders of attachment or injunction necessary to maintain the status quo pending litigation or to enforce judgments against Lienor, any Guarantor or the Aircraft or to gain possession of the Aircraft.

(k)   This Agreement may be executed in any number of counterparts, all of which taken together shall constitute one and the same instrument, and either of the parties hereto may execute this Agreement by signing any such counterpart.

(l)   Lienor hereby expressly waives the provisions of Articles 11(2) and 13(2) of the Convention and Article IX(6) of the Protocol.

SECURED PARTY:

GE Commercial Australasia Pty Ltd                       GE Commercial Corporation (Australia) Pty Ltd

By:_____                           By:_____

Name:_____                           Name:_____

Title:_____                          Title:_____

LIENOR:

Wells Fargo Bank Northwest NA as Owner Trustee

By:_____

Name: Jon Croasmun

Title: Vice President

SQ17823_2

# EXHIBIT B

### AIRCRAFT TITLE REPORT from FAA RECORDS SEARCH

Account No.        1

Phone No.

For: Insured Aircraft Title Service, Inc.
Escrow Department
4848 S.W. 36th St.
Oklahoma City, OK 73179

Attn: Joan Roberts

**I A T S** — **Insured Aircraft Title Service, Inc.**
P.O. BOX 19527     405-681-6663
OKLAHOMA CITY, OKLAHOMA 73144
TOLL FREE:     PHONE 800-654-4882

RE:   N/A

---

**FAA Records Search revealed the following TITLE information on the aircraft herein described.**

| | |
|---|---|
| Object: | N604AU |
| Make: | Bombardier Inc. |
| Model: | CL-600-2B16 |
| Serial No.: | 5434 |

| | |
|---|---|
| Record Owner: | Wells Fargo Bank Northwest, N.A. - Owner Trustee under a Trust Agreement dated 7-11-07 |
| Address: | 299 South Main St., 12th FL., MAC U1228-120, Salt Lake City, UT 84111 |

| | | | |
|---|---|---|---|
| Type: | Corporation | Date Registered: | 7-19-07 |
| Title: | Vice President | | |
| Signed By: | Jon Croasmun | | |

| | | | |
|---|---|---|---|
| Acquired By: | Bill of Sale | | |
| Date: | 7-18-07 | Date Filed: | 7-18-07 |
| Recorded: | 7-19-07 | FAA Doc. # | F098225 |

| | |
|---|---|
| Previous Owner: | Bombardier Aerospace Corporation |
| Address: | Address Not Given |
| Date Registered: | 7-19-07 |

| | | | |
|---|---|---|---|
| Subject To: | Security Agreement | | |
| Dated: | 7-18-07 | **Amount $ Not Given** | |
| Filed at FAA: | 7-18-07 | Recorded: 8-3-07 | FAA Doc. # RR035530 * |
| Drawn By: | Wells Fargo Bank Northwest, N.A. - Owner Trustee | | |
| Address: | 299 South Main St., 12th FL., MAC U1228-120, Salt Lake City, UT 84111 | | |
| In Favor Of: | GE Commercial Corporation (Australia) Pty. Ltd. and GE Commercial Australasia Pty. Ltd. | | |
| Address: | Level 12, NAB House, 255 George Street, Sydney, New South Wales, Australia | | |

---

## AIRCRAFT TITLE REPORT from FAA RECORDS SEARCH

Account No.          1

Phone No.

For: Insured Aircraft Title Service, Inc.
  Escrow Department
  4848 S.W. 36th St.
  Oklahoma City, OK 73179

  Attn: Joan Roberts

**I A T S    Insured Aircraft Title Service, Inc.**
P.O. BOX 19527          405-681-6663
OKLAHOMA CITY, OKLAHOMA 73144
TOLL FREE:   PHONE 800-654-4882

RE:   N/A

Formerly N322BX

* Covers N322BX (now N604AU) and 2 General Electric CF34-3B engines, serial numbers 872613 and 872614

The file contains copies of the following unrecorded documents:

(1). Claim of Lien dated 2-24-09, filed 3-4-09, against the aircraft in favor of American Express for $179,072.49, Jeffrey George for $298,568.89 and Julie Frank for $23,850.00, submitted by AGG Aviation, 3540 W. Sahara Avenue, Ste. 386, Las Vegas, NV 89102 (duplicate filed 3-17-09).

FAA letter dated 3-5-09 to AGG Aviation requests clarification of the lien claimant as three entities are listed. Also give the complete date the last services were rendered.

(2). Claim of Lien dated 2-24-09, filed 4-14-09 against the aircraft, in favor of AGG Aviation, for $322,418.89.

FAA letter dated 5-21-09 to AGG Aviation, states that the complete date must be shown for the last services rendered, also submit a $5.00 recording fee.

(3). Claim of Lien dated 1-14-10, filed 1-20-10 against the aircraft, in favor of AGG Aviation LLC/Jeffrey George, for $295,000.00.

FAA letter dated 2-4-10 to AGG Aviation LLC requests the complete date the last services were rendered.

**This search is subject to the filings reflected on the index of collateral provided by the FAA and Insured Aircraft Title Service, Inc. assumes no responsibility as to the accuracy of said source, and does not guarantee, insure, or warrant that said FAA index is free of error.**

This Title Report does not include a search for international interests registered at the International Registry.

Report Date:    03/02/2010
7:29 a.m. Central
**INSURED AIRCRAFT TITLE SERVICE, INC.**

By  _____
          E. Cotton
        Title Examiner

EC/ts

## AIRCRAFT TITLE REPORT from FAA RECORDS SEARCH

Account No.          1

Phone No.

For: Insured Aircraft Title Service, Inc.
Escrow Department
4848 S.W. 36th St.
Oklahoma City, OK 73179

**I A**
**T S**
**Insured Aircraft Title Service, Inc.**
P.O. BOX 19527          405-681-6663
OKLAHOMA CITY, OKLAHOMA 73144
TOLL FREE:     PHONE 800-654-4882

RE:    N604AU

Attn: Joan Roberts

**FAA Records Search revealed the following TITLE information on the aircraft herein described.**

| | |
|---|---|
| **Object:** | Engine |
| **Make:** | General Electric |
| **Model:** | CF34-3B |
| **Serial No.:** | 872613 |

**Record Owner:**     FAA does not register engines by name of owner.  Lien status only is subject to recordation.

| | |
|---|---|
| **Subject To:** | Security Agreement |
| **Dated:** | 7-18-07          **Amount $** Not Given |
| **Filed at FAA:** | 7-18-07          **Recorded:** 8-3-07     **FAA Doc. #** RR035530 * |
| **Drawn By:** | Wells Fargo Bank Northwest, N.A. - Owner Trustee |
| **Address:** | 299 South Main St., 12th FL., MAC U1228-120, Salt Lake City, UT 84111 |
| **In Favor Of:** | GE Commercial Corporation (Australia) Pty. Ltd. and GE Commercial Australasia Pty. Ltd. |
| **Address:** | Level 12, NAB House, 255 George Street, Sydney, New South Wales, Australia |

\* Covers N322BX (now N604AU) and 2 General Electric CF34-3B engines, serial numbers 872613 and 872614

This report is subject to the accuracy of the Federal Aviation Administration employees and computers in their record keeping abilities in recordation of liens regarding engines of 550 shp or over.  Specifically excluded from this report are liens, security interests, or other encumbrances against engines which are not specifically noted on the engine data cards maintained by the FAA prior to September 1997, and/or on the engine serial number inquiry screen for encumbrances recorded after September 18, 1997.

## AIRCRAFT TITLE REPORT from FAA RECORDS SEARCH

Account No.      1

Phone No.

For: Insured Aircraft Title Service, Inc.
    Escrow Department
    4848 S.W. 36th St.
    Oklahoma City, OK 73179

**Insured Aircraft Title Service, Inc.**
P. O. BOX 19327    405-681-6663
OKLAHOMA CITY, OKLAHOMA 73144
TOLL FREE:   PHONE 800-654-4882

RE:   N604AU

Attn: Joan Roberts

This search is subject to the filings reflected on the index of collateral provided by the FAA and  Insured Aircraft Title Service, Inc. assumes no responsibility as to the accuracy of said source, and does not guarantee, insure, or warrant that said FAA index is free of error.

This Title Report does not include
a search for international interests
registered at the International Registry.

Report Date:   03/02/2010

7:29 a.m. Central

INSURED AIRCRAFT TITLE SERVICE, INC.

By           E. Cotton

Title Examiner

EC/ts

## AIRCRAFT TITLE REPORT from FAA RECORDS SEARCH

**Account No.**      1

**Phone No.**

For: Insured Aircraft Title Service, Inc.
      Escrow Department
      4848 S.W. 36th St.
      Oklahoma City, OK 73179

**I A T S**    **Insured Aircraft Title Service, Inc.**
P.O. BOX 19527     405-681-9883
OKLAHOMA CITY, OKLAHOMA 73144
TOLL FREE:    PHONE 800-654-4882

      Attn: Joan Roberts

**RE:**    N604AU

---

**FAA Records Search revealed the following TITLE information on the aircraft herein described.**

| | |
|---|---|
| **Object:** | Engine |
| **Make:** | General Electric |
| **Model:** | CF34-3B |
| **Serial No.:** | 872614 |

**Record Owner:**      FAA does not register engines by name of owner. Lien status only is subject to recordation.

| | |
|---|---|
| **Subject To:** | Security Agreement |
| **Dated:** | 7-18-07      **Amount $ Not Given** |
| **Filed at FAA:** | 7-18-07      **Recorded:** 8-3-07    **FAA Doc. #** RR035530 * |
| **Drawn By:** | Wells Fargo Bank Northwest, N.A. - Owner Trustee |
| **Address:** | 299 South Main St., 12th FL., MAC U1228-120, Salt Lake City, UT 84111 |
| **In Favor Of:** | GE Commercial Corporation (Australia) Pty. Ltd. and GE Commercial Australasia Pty. Ltd. |
| **Address:** | Level 12, NAB House, 255 George Street, Sydney, New South Wales, Australia |

\* Covers N322BX (now N604AU) and 2 General Electric CF34-3B engines, serial numbers 872613 and 872614

This report is subject to the accuracy of the Federal Aviation Administration employees and computers in their record keeping abilities in recordation of liens regarding engines of 550 shp or over. Specifically excluded from this report are liens, security interests, or other encumbrances against engines which are not specifically noted on the engine data cards maintained by the FAA prior to September 1997, and/or on the engine serial number inquiry screen for encumbrances recorded after September 18, 1997.

---

**AIRCRAFT TITLE REPORT from FAA RECORDS SEARCH**

Account No.               1

Phone No.

For: Insured Aircraft Title Service, Inc.
Escrow Department
4848 S.W. 36th St.
Oklahoma City, OK 73179

**I A T S  Insured Aircraft Title Service, Inc.**
P.O. BOX 19527        405-681-6683
OKLAHOMA CITY, OKLAHOMA 73144
TOLL FREE:   PHONE 800-654-4882

RE:    N604AU

Attn: Joan Roberts

This search is subject to the filings reflected on the index of collateral provided by the FAA and  Insured
Aircraft Title Service, Inc. assumes no responsibility as to the accuracy of said source, and does not
guarantee, insure, or warrant that said FAA index is free of error.

Report Date:    03/02/2010

This Title Report does not include         7:29 a.m. Central
a search for international interests         INSURED AIRCRAFT TITLE SERVICE, INC.
registered at the International Registry.
By                       E. Cotton

                                              Title Examiner

EC/ts

# EXHIBIT C

4/16/10 11:34 AM



**U.S. Department
of Transportation
Federal Aviation
Administration**

Flight Standards Service
Aircraft Registration Branch, AFS-750

P.O. Box 25504
Oklahoma City, Oklahoma 73125-0504
(405) 954-3116
Toll Free: 1-866-762-9434
WEB Address: http://registry.faa.gov

March 5, 2009

AGG AVIATION
3540 W SAHARA AVE SUITE 386
LAS VEGAS NV 89102

Dear Sirs:

The claim of lien concerning BOMBARDIER INC CL-600-2B16, serial number 5434, N604AU, has been received. The claim executed by AGG Aviation?, may be recorded upon clarification / completion of the following requirements.

a. Clarify the name of the lien claimant. Document list three entities as lien claimant. Submit a legible claim which shows the complete amount of the claim. The total amount is illegible.

b. The claim must be sign in ink by the lien claimant and show the complete date the last services was rendered to the aircraft. Document only list the date as February 2009.

Please be advised, Nevada Statutes pertaining to claims of lien are only acceptable, provided claims for labor, materials, storage or services are rendered to the aircraft.

If you require further assistance, please contact the Aircraft Registration Branch at (405) 954-3116 or toll free 1-866-762-9434.

Sincerely,

RAYMOND MCDONALD
Legal Instruments Examiner
Aircraft Registration Branch

Enclosure: claim

AFS-750-48-2 (3/06)



FAA Aircraft Registration Branch, AFS-750
P.O. Box 25504
Oklahoma City, OK 73125-0504

February 24, 2009

Dear Administrator

Re: Claim of Lien

Below are details for a claim of lien against an aircraft for nonpayment of service fees and expenses
incurred by the flight department. The claimants are as follows:

| NAME | SERVICES PROVIDED | DATES | AMOUNT |
|------|-------------------|-------|--------|
| AMERICAN EXPRESS | CREDIT CARS | 09/2008 - 02/2009 | 179,072.49 |
| JEFFREY GEORGE | MANAGEMENT | 03/2007 - 02/2009 | 298,568.89 |
| JULIE FRANK | ADMINISTRATION | 12/2008 - 02/2009 | 23,850.00 |
| | | | |

Description of Aircraft:

Reg:              N604AU
Manufacturer:     Bombardier Aerospace
Model design:     Challenger 604
Serial #:         5434

Date of last services furnished:        February 2009

Julie Frank
Operations Manager
AGQ Aviation
Tel: +1 702 355 0408
Fax: +1 760 406 5634
3540 W. Sahara Ave
Suite 386
Las Vegas, NV 89102
jfrank@agqaviation.com

090831005234
$5.00  03/04/2009

# EXHIBIT D



**U.S. Department
of Transportation**

**Federal Aviation
Administration**

Flight Standards Service
Aircraft Registration Branch,
AFS-750

P.O. Box 25504
Oklahoma City, Oklahoma 73125-0504
(405) 954-3116
Toll Free: 1-866-762-9434
WEB Address: http://registry.faa.gov

May 21, 2009

ACG AVIATION
3540 WEST SAHARA AVE., STE. 386
LAS VEGAS NV 89102

### RECORDATION OF CLAIM OF LIEN
### BOMBARDIER INC CL-600-2B16 S/N 5434, N604AU

The Claim of Lien executed by                                    **ACG Aviation**
may be recorded upon compliance with the items checked below:

☐ Forward the security instrument which has been signed in INK. _____

☐ Signature in INK of _____

☐ Show title of person signing for _____

☐ Show name of _____

☐ Show complete description of collateral (make, model, serial number, and registration number).

☒ Submit recording fee of $5.00. Please return this letter with your remittance.

☐ Submit authorization for _____

☐ The name of debtor must be identical to that of the registered owner.

☐ See Item _____ on the attached sheet for more information on our requirements.

### REGISTRATION REQUIREMENTS:

☐ The aircraft records show the owner as _____

   Submit documentary evidence of ownership covering each change in the ownership of the aircraft from the
   above named owner to _____

☐ Submit registration fee of $ _____. Please return this letter with your remittance.

☐ Submit completed Aircraft Registration Application in debtor's name, signed in INK, including typed or printed name of signer in
   signature block. Form enclosed.
   Show the complete date of last services furnished, this must include the month, day and year.

*Terri Long*

TERRI LONG
Legal Instruments Examiner
Aircraft Registration Branch

Enclosure

AFS-750-48-3 (02/09)

OKLAHOMA
OKLAHOMA CITY
2010 JAN 20  AM 10 17
AIRCRAFT REGISTRATION BR
FILED WITH FAA

# EXHIBIT E



**U.S. Department
of Transportation**

**Federal Aviation
Administration**

Flight Standards Service
Aircraft Registration Branch,
AFS-750

P.O. Box 25504
Oklahoma City, Oklahoma 73125-0504
(405) 954-3115
Toll Free: 1-866-762-9434
WEB Address: http://registry.faa.gov

February 4, 2010

AGG AVIATION LLC
3540 WEST SAHARA AVE STE 386
LAS VEGAS NV 89102

### RECORDATION OF CLAIM OF LIEN
### BOMBARDIER INC CL-600-2B16 S/N 5434, N604AU

The Claim of Lien executed by                          **AGG Aviation LLC** _____
may be recorded upon compliance with the items checked below:

- ☐ Forward the security instrument which has been signed in INK. _____
- ☐ Signature in INK of _____
- ☐ Show corporate/managerial title of person signing for _____
- ☐ Show name of _____
- ☐ Show complete description of collateral (make, model, serial number, and registration number). _____

- ☐ Submit recording fee of $_____. Please return this letter with your remittance.
- ☐ Submit authorization for _____

- ☐ The name of debtor must be identical to that of the registered owner.
- ☐ See item _____ on the attached sheet for more information on our requirements.

### REGISTRATION REQUIREMENTS:

- ☐ The aircraft records show the owner as _____
  Submit documentary evidence of ownership covering each change in the ownership of the aircraft from the above named owner to _____

- ☐ Submit registration fee of $ _____. Please return this letter with your remittance.
- ☐ Submit completed Aircraft Registration Application in debtor's name, signed in INK, including typed or printed name of signer in signature block. Form enclosed.
  [X] Show the complete date last services were furnished, this should include the month, day, and year. The claim of lien submitted only shows 1/2010.

*Crystal Kelley*

CRYSTAL KELLEY
Legal Instruments Examiner
Aircraft Registration Branch

Enclosure claim of lien

AFS-750-48-3 (07/09)



FAA Aircraft Registration Branch, Registration Building AFS-750
6425 South Denning street
Oklahoma City, OK 73169

1/14/2010

From:  Jeffrey M George A&P #368746482 / Director

Dear Administrator

Re: Claim of Lien

Below are details for a claim of lien against an aircraft for nonpayment of service fees incurred by, myself/company.

The claimants are as follows:

| NAME | SERVICES PROVIDED | DATES | AMOUNT |
|------|-------------------|-------|--------|
| AGG LLC / JEFFREY GEORGE | Management and services rendered for Intl multi-aircraft operations | 03/2007 – 1/2010 | |
| TOTAL | | | 295,000.00 |

Description of Aircraft:

Reg:                N604AU
Manufacturer:       Bombardier Aerospace
Model design:       Challenger 604
Serial #:           5434

Date of last services furnished:        1/2010

1/14/2010

Director

Jeffrey M George A&P #368746482
Director/Operations manager (multiple Aircraft)
AGG Aviation LLC
3540 W. Sahara Ave
Suite 386
Las Vegas, NV 89102
Tel: +1 760 831 2690
Fax: +1 760 406 5634
Jeffrey.george@earthlink.net

100200949547
$5.00 01/20/2010

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Consuelo B. Marshall and the assigned discovery Magistrate Judge is Victor B. Kenton.

The case number on all documents filed with the Court should read as follows:

## CV10-2804 CBM (VBKx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

==========================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| **[X] Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | **[ ] Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | **[ ] Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

Name & Address:
Michael A. Garabed, Esq. (SBN 223511)
Reed Smith LLP
355 So. Grand Avenue, 29th Floor
Los Angeles, CA 90071-1514
Tel: 213-457-8000; Fax: 213-457-8080

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

GE COMMERCIAL Corporation (AUSTRALIA) PTY LTD, an Australia corporation, and GE COMMERCIAL AUSTRALASIA PTY LTD., an Australia corporation

PLAINTIFF(S)

v.

AGG AVIATION LLC, a limited liability company, JEFFREY GEORGE, individually, and JULIE FRANK, individually

DEFENDANT(S).

CASE NUMBER

CV 10-02804 CBM VBKx

SUMMONS

---

TO:   DEFENDANT(S): AGG AVIATION LLC, JEFFREY GEORGE and JULIE FRANK

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, _Michael A. Garabed, Esq._, whose address is _Reed Smith LLP, 355 So. Grand Ave., 29th Floor, Los Angeles, CA  90071-1514_. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: ___1 6 APR 2010___        By: _____
                                          Deputy Clerk

                                          (Seal of the Court)

                                          SEAL

_[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)]._

---

CV-01A (12/07)                    SUMMONS

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| GE COMMERCIAL (AUSTRALIA) PTY LTD, an Australia corp., and GE COMMERCIAL AUSTRALASIA PTY LTD, an Australia corp. | AGG AVIATION LLC, a limited liability company, JEFFREY GEORGE, individually, and JULIE FRANK, individually |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| Michael A. Garabed, Esq. (SBN 223951) Tel: 213-457-8000; Fax: 213-457-8080 Reed Smith LLP 355 South Grand Avneue, 29th Floor, Los Angeles, CA 90071-1514 | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff

☐ 2 U.S. Government Defendant

☐ 3 Federal Question (U.S. Government Not a Party)

☑ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☑ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☑ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from another district (specify):

☐ 6 Multi-District Litigation

☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☐ Yes ☑ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☑ No ☐ **MONEY DEMANDED IN COMPLAINT: $**

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 U.S.C. Section 1332(a) and 28 U.S.C. Section 2201

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☑ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | **SOCIAL SECURITY** |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | **IMMIGRATION** | | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | **REAL PROPERTY** | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 465 Other Immigration Actions | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | | | | **FEDERAL TAX SUITS** |
| | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

**FOR OFFICE USE ONLY:** Case Number:   **CV 10-02804**

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?  ☑ No   ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?  ☑ No   ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply)   ☐ A.  Arise from the same or closely related transactions, happenings, or events; or
                               ☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or
                               ☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or
                               ☐ D.  Involve the same patent, trademark or copyright, <u>and</u> one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Australia |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Nevada |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
     **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Riverside County | |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved.

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____   Date  April 15, 2010

   **Notice to Counsel/Parties:**  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings
   or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed
   but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |